1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
 2
      Case No. 19-cv-2675-REB-MEH
 3    _____

 4    TOMOE NOJIRI,

 5        Plaintiff,

 6    vs.

 7    EARTH.COM, INC.,

 8        Defendant.
      _____
 9

10            Proceedings before MICHAEL E. HEGARTY, United

11    States Magistrate Judge, United States District Court for the

12    District of Colorado, commencing at 11:05 a.m., January 8,

13    2020, in the United States Courthouse, Denver, Colorado.

14    _____

15            WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17    _____

18                       APPEARANCES

19            RICHARD LIEBOWITZ, Attorney at Law,

20    appearing for the Plaintiff.

21            JOHN YATES, Attorney at Law, appearing

22    for the Defendant.

23    _____

24            TELEPHONIC SCHEDULING CONFERENCE

25
```

2

```
 1                    P R O C E E D I N G S

 2              (Whereupon, the within electronically recorded

 3    proceedings are herein transcribed, pursuant to order of

 4    counsel.)

 5              (Audio for Mr. Liebowitz was muffled, resulting in

 6    numerous inaudibles.)

 7              THE COURT:  Case Number 19-cv-02675, Tomoe Nojiri

 8    vs. Earth.Com, Inc.

 9              DEPUTY:  Hi.  Who do we have on the line?

10              MR. LIEBOWITZ:  This is Richard Liebowitz,

11    (inaudible) counsel for plaintiff.  Good morning, Your Honor.

12              MR. YATES:  And we have John Yates for Earth.Com

13    Inc., the defendant.

14              DEPUTY:  Thank you very much.

15              THE COURT:  Thank you.

16              All right, Case Number 19-cv-02675.  Someone please

17    pronounce that plaintiff's name for me.

18              MR. LIEBOWITZ:  Yes.  (Inaudible.)

19              THE COURT:  I can't even hear you and this is not

20    going to work, so we may have to call in again.

21              MR. LIEBOWITZ:  Adjust the -- I turned the

22    (inaudible).

23              THE COURT:  Okay.  Is this Mr. Liebowitz?

24              MR. LIEBOWITZ:  Yes.

25              THE COURT:  The reception is very spotty, so you're
```

3

1    going to have to speak slowly and clearly.  Can you hear him,

2    Mr. Yates?

3            MR. YATES:  I can hear.  This is Mr. Yates for

4    Earth.Com.  Can you hear me, sir?

5            THE COURT:  Mr. Yates, I can hear you clearly, but

6    can you hear Mr. Liebowitz?

7            MR. YATES:  I believe I can, sir, but it is spotty

8    a little bit.

9            THE COURT:  Okay.  Let me try to adjust the volume

10   here.  I think I've got it up as far as it will go.  All

11   right, we'll give it a shot.

12           Was this -- how long, Mr. Liebowitz, was the

13   photograph up on the defendant's website, according to your

14   understanding?

15           MR. LIEBOWITZ:  Your Honor, I'm not sure.

16           THE COURT:  Okay.  Days, weeks, months?  You don't

17   know?

18           MR. LIEBOWITZ:  Your Honor, I don't know.  That's

19   defendant's judgment.

20           THE COURT:  Okay.  Mr. Yates, do you have any

21   information on that?

22           MR. YATES:  We have asked repeatedly -- my client,

23   Earth.Com, has asked pre-suit and then twice since the suit

24   what link he's referring to to say it was up on the website

25   and they've either not responded or responded with links that

4

1    are (inaudible), not the links as we discussed.

2           We do know that the current photo is licensed and

3    has been in my client's possession for, you know, since

4    February.  I don't -- I don't know because there is

5    information we don't have from plaintiff that we would like,

6    but conceivably as few as one view earlier this year from the

7    United -- sorry, earlier last year from the United States is

8    possible, based on what's linked up.

9           Again, we've asked for some discovery that would

10   help do some analytics on that and we haven't gotten that yet

11   from plaintiff.

12          THE COURT:  Okay.  Well, I guess -- I think it's

13   fair the defendant knows what they're being sued for, so I

14   want you to submit up to three questions of that nature today

15   by e-mail, copy the Court, and I would like a response within

16   two weeks.  All right, Mr. Liebowitz?

17          MR. LIEBOWITZ:  All right.  So I understand, what

18   questions?

19          THE COURT:  I'm taking Mr. Yates' statements at

20   face value that he has asked for some information for weeks

21   or months and he hasn't gotten it, so I want him to get that.

22          MR. LIEBOWITZ:  We don't know, we don't know.  I

23   mean, the link (inaudible).  (The audio was not clear enough

24   to transcribe the rest of Mr. Liebowitz's statements.)

25          THE COURT:  Well, I mean, I guess -- I guess I'm

5

1    going to let them do a contention interrogatory then.  I

2    mean, they've got to know -- they've got to know why you

3    believe there is a violation and you can't just say, well,

4    they know, it's in their --

5              MR. LIEBOWITZ:  Yeah, but it's on their website,

6    the screenshot and the (inaudible) shows on their website.

7              THE COURT:  Have you provided a screenshot for

8    them?

9              MR. LIEBOWITZ:  Yeah, of course, it's in the

10   complaint.

11             THE COURT:  Okay, Mr. Yates, I'm not understanding.

12             MR. YATES:  There is a screenshot that is attached

13   to the complaint and that through plaintiff's agent company

14   in Germany was sent pre-suit to my client and there is some

15   communications, and those communications my client asked what

16   the link that this looks for so that my client can

17   investigate and there was never in those communications an

18   answer to the particular link.  Just this is the screenshot.

19             THE COURT:  So a screenshot without a URL attached?

20             MR. YATES:  A screenshot without a URL attached,

21   yes, Your Honor.

22             THE COURT:  I would like the URL provided.  I mean,

23   if somebody takes the screenshot, whoever took that

24   screenshot has the URL.  Just provide that, okay,

25   Mr. Liebowitz.

6

1          MR. LIEBOWITZ:  Yeah, well, if (inaudible) as

2     plaintiff's agents in Germany (inaudible), how am I supposed

3     to produce them?

4          THE COURT:  Maybe I don't understand the

5     technology, but I thought --

6          MR. LIEBOWITZ:  So let me tell you.  So what

7     happens is (inaudible) you know, sometimes if you take a

8     screenshot of a website (inaudible) sometimes it's not there,

9     but you're taking a screenshot of the website, and I know

10     that there is (inaudible), it doesn't seem like we would have

11     it, but it was on a website, screenshot shows.  So all they

12     have to do on the defendant's end is go (inaudible) internal,

13     on the website and know back end -- of the articles that they

14     have on their website.

15          So simply what they could do is they could just do

16     the title of the article and they could just -- (inaudible)

17     internally here that you could find out the URL on

18     defendant's end.

19          So I think the question posed the defendant and

20     finding out from them the URL and them produce it to us, the

21     plaintiff.  (Inaudible) screenshot and that's enough.  They

22     showed that they copied it and that's that.  (Inaudible) they

23     can't produce it.

24          MR. YATES:  Your Honor, just to -- to add to the --

25     this is again Jay Yates for Earth.Com.  To add to it, we had

7

1    asked -- we had taken a guess as to what we think the link

2    would be.  We have -- and I referred to this in the earlier

3    version where -- I referred to this in the schedule.

4         There are -- at one point in time to the link we

5    believe, 26 total views of the image, including all of the

6    lawyers, 13 from the U.S., 13 from Taiwan.  What causes

7    confusion with that is there is communications from someone

8    in Germany and we asked, you know, who created the

9    screenshot, or we were asked to -- so we have contention

10   interrogatories or regular discovery.

11        We don't know who actually created the exhibit

12   being attached to the complaint.  The plaintiff is in Japan

13   per the complaint, but we don't believe it's actually the

14   plaintiff.  We're not sure if it's one of their agents and

15   we're not sure if they know what link it would be to look at.

16        And again, we've asked for the link, and we would

17   also like to know who created the screenshot.

18        MR. LIEBOWITZ:  So that -- Your Honor, so the

19   defendant knows that that 20 -- whatever, 26 people

20   (inaudible) website and has the photograph, so that's that.

21        MR. YATES:  No, that's a misstatement,

22   Mr. Liebowitz.

23        MR. LIEBOWITZ:  I though you said it's 26 photos.

24        MR. YATES:  We know that there are 26 views of a

25   particular link that includes license images up to a certain

8

1    point and when the license image.  There is one view -- prior

2    to when we had the license image that is on the website

3    currently, there is literally one view that we haven't gone

4    back and discovered and found if we have another version of

5    that license.  There is some --

6           MR. LIEBOWITZ:  (Inaudible.)

7           THE COURT:  Mr. Liebowitz.

8           MR. LIEBOWITZ:  (Inaudible.)

9           THE COURT:  Mr. Liebowitz.

10          MR. LIEBOWITZ:  Yes, sir.

11          THE COURT:  It's hard enough to hear you, but don't

12   interrupt while he's talking.

13          MR. LIEBOWITZ:  Sorry.

14          THE COURT:  Go ahead, Mr. Yates.

15          MR. YATES:  So, again, Your Honor, there are to the

16   presumed link, our best guess to the link, 26 total views, 13

17   from Taiwan, 13 in the U.S.  We know the current image that

18   has (inaudible) license and that includes all the attorneys,

19   including myself, from multiple of those views.

20          We have asked for the link and we also did not know

21   who created the screenshot, and part of the reason for this

22   as we -- we make (inaudible), is they also had a second

23   complaint -- I mean, a second claim and cause of action that

24   we move to partially dismiss and then they amended their

25   complaint, but at one point in time this case involved

9

1    statutory damages.  We don't believe that this case involves

2    statutory damages at all given the way the registration was

3    filed and when the communications for pre-suit -- that were

4    the pre-suit took place.

5         So we think at most we're looking at one view of

6    one image, but I can't say at this time that that image was

7    even up there.  My client is not in possession of the image.

8    They had gone and searched, the accused image.  They had gone

9    and searched and obviously there may be more discovery that

10   can show something.

11        But, you know, to date there is conceivably one

12   view of one image my client was asked to take down and went

13   down -- in fact, Mr. Liebowitz' view, I'm not sure it was

14   ever up because we haven't been able to find the link and/or

15   who created the screenshot to be able to understand where it

16   came from.

17        THE COURT:  Okay.  Well, just, I guess, focus your

18   discovery early, and if you believe all of these things are

19   true that you just said, file an early dispositive motion.  I

20   don't know what else I can do.  So let me go through the

21   scheduling --

22        MR. LIEBOWITZ:  Yeah, we had discovery -- we had

23   discovery on all this stuff.  (Inaudible.)  And regardless of

24   the fact that there is one here, they posted the photograph.

25   That's copyright infringement, period, you know.  My client

10

1    is --

2            THE COURT:  I don't disagree, but --

3            MR. LIEBOWITZ:  -- entitled to --

4            THE COURT:  Mr. Liebowitz, if some of what he says

5    is true, it also might govern how much discovery I give you

6    because of the concept of the proportionality so I've just

7    got to pay attention to that.  That's all I'm saying, okay.

8            MR. LIEBOWITZ:  (Inaudible) that defendant did a

9    motion to dismiss, which is (inaudible) about Court orders.

10   I mean, we could respond to (inaudible), but I'm not sure

11   that you saw their -- the motion, (inaudible).

12           MR. YATES:  Your Honor, if I may, we did file a

13   motion to dismiss.  This Court has granted an order when we

14   were supposed to meet and confer, there was a specific

15   deadline.  Rather than have the meet and confer with

16   plaintiff, plaintiff has gone off and filed, I believe at the

17   time of our motion, early seven -- if I recall, it's in the

18   motion, other federal lawsuits alleging copyright violations

19   rather than respond to the orders in this Court.

20           And an assumption of that, defendant's counsel

21   submitted to this Court a one-sided schedule as best we could

22   of information that was cost -- that was borne by my client

23   responding to the order, and we subsequently filed the, you

24   know, motion to dismiss.

25           And we believe -- when you look at the case law,

1    it's not frivolous, it's on its merits.  We believe that it

2    is within the power under the rules (inaudible) motion to

3    dismiss this case.

4           And, you know, we did not -- it is not a frivolous

5    motion if Mr. Liebowitz is going to continue to violate Court

6    orders shifting that cost onto my client that he allowed --

7    be allowed to proceed with the case that he has filed, but is

8    not prosecuting within the context of the orders from this

9    Court.

10           THE COURT:  Okay.  Well, let's --

11           MR. LIEBOWITZ:  Your Honor, can I respond to --

12    respond to that, defense counsel?

13           THE COURT:  Yeah, your response will be your

14    answers to my questions, okay, so just listen carefully.

15           MR. LIEBOWITZ:  Okay.

16           THE COURT:  You guys aren't the first litigants in

17    this court, okay.  We kind of know how to do this stuff.  So

18    when we issue orders, we believe that they're going to be

19    followed, and in every case in this district the parties meet

20    before today, usually approximately two weeks before today,

21    and they participate, cooperate in preparing the scheduling

22    order, and it goes well.

23           This is the fourth scheduling conference that I've

24    had this morning.  So --

25           MR. LIEBOWITZ:  So -- so, Your Honor, the only

12

1    thing the defendant has do is pick up the phone and call me

2    or e-mail me and say (inaudible).  You know, they went out

3    and just did it themselves or they can pick up the phone, but

4    that's -- it's like courtesy, but that's not like throwing

5    someone under the bus and saying, Oh, you know, I just forgot

6    to do.  Just pick up the phone (inaudible).  I don't think

7    they deserve the motion to dismiss on (inaudible).

8            THE COURT:  I understand, but I want to ask you

9    some questions.  Usually it's the plaintiff who has filed the

10   lawsuit who initiates these conversations.  Did you simply

11   miscalendar things?

12           MR. LIEBOWITZ:  Listen, I mean, everyone

13   (inaudible) some dates, you know, it's not calendared

14   correctly, but I don't think it rises to the level of

15   dismissing this case for not having it on the 8th.  We filed

16   it a couple of weeks later after the holidays.  (Inaudible)

17   dismissing the case and having to respond to that and spend

18   all the time and resources and respond to that.  I mean,

19   that's -- if you're looking at just (inaudible).

20           THE COURT:  Okay.

21           MR. LIEBOWITZ:  (Inaudible).

22           THE COURT:  I would just like --

23           MR. LIEBOWITZ:  You know, I'm --

24           THE COURT:  Mr. Liebowitz, have you ever heard of

25   the term, "thou protest too much"?  Does that mean anything

13

1  to you?

2          MR. LIEBOWITZ:  I don't know what that means.

3          THE COURT:  You don't know that?  It means the more

4  you have to explain yourself the more it sounds like you're

5  guilty.  I'm asking you a simple question.

6          MR. LIEBOWITZ:  Okay, well --

7          THE COURT:  Did you simply miscalendar?

8          MR. LIEBOWITZ:  (Inaudible).

9          THE COURT:  Mr. Liebowitz, don't talk over me.

10  This is impossible.  If you guys really want to travel to my

11  courtroom and be here tomorrow, I'll accommodate you, but if

12  you would like to do this by phone, you listen to me

13  carefully and you answer my questions.  Does that sound all

14  right?

15          MR. LIEBOWITZ:  Okay.

16          THE COURT:  Okay.  Did you just simply miscalendar

17  it and not contact Mr. Yates to commence the required

18  procedure?

19          MR. LIEBOWITZ:  It's miscalendared.

20          THE COURT:  Okay.

21          Mr. Yates, if you have my commitment that I

22  actively manage cases and that I do not countenance flagrant

23  violations of the rules and not infrequent when an attorney

24  has caused multiplication of proceedings resulting in undue

25  expense to the other side, I have reallocated those expenses.

14

1    If I commit to you that, then would you say that the motion

2    to dismiss maybe is -- is unnecessary at this point?

3             MR. YATES:  Your Honor, what I would like to

4    respond to that -- this is again Mr. Yates for Earth.Com --

5    is that I did pick up the phone early in this case and reach

6    out to Mr. Liebowitz about his second claim that has

7    statutory damages.  We pointed out the flaws.  He was asked

8    to file a new motion -- I mean, to file an amended complaint

9    removing the statutory damages and he did not.  He made me

10   file a motion on behalf of the defendant, the partial motion

11   for summary judgment, that was filed in this particular case.

12            So this is not a -- Mr. Liebowitz is dealing

13   generally (inaudible) it's within the context of a case with

14   26 docket entries, and at least one of those I believe we

15   shouldn't have had to file because I did pick up that phone.

16   And I don't believe with all due candor to the Court that

17   picking up the phone and asking Mr. Liebowitz would result in

18   him taking action even that it is appropriate that he would

19   later take when required to by the Court.

20            Your Honor, we're willing to move forward.  I

21   appreciate your assurances that you manage this case.  This

22   is not the first case where someone who has asked, and

23   Mr. Liebowitz prosecuted case to be dismissed in the district

24   of Colorado.  That's part of the motion.

25            And I would also say as part of this process, I

15

1   have asked repeatedly from Mr. Liebowitz for a date for -- or

2   date range for when we can take the depositions.  I realize

3   you're not given to that point in the discovery process based

4   on earlier in this hearing, but I have not received a date

5   when plaintiff could be deposed, and given that both counsels

6   are out of the district, given that there is likely a

7   translator necessary that's involved (inaudible) some of

8   these questions (inaudible) I just want to say I've been

9   frustrated.

10          But, Your Honor, we're willing to move forward

11   however you would like to proceed.  It's obviously your

12   courtroom and we are members of the Bar and, you know, we're

13   just going to see justice done, sir.

14          THE COURT:  All right.  Well, here is the thing.

15   It isn't -- I would say it's not the typical case that at the

16   time of the scheduling conference we have dates for

17   depositions set.  I don't have a problem with you being eager

18   to set depositions, but I'm not going to fault Mr. Liebowitz

19   for not actually having a date for the plaintiff's deposition

20   ready to go on the date of the scheduling order, which is my

21   first contact with the case.  So I'm not going to cast stones

22   for that one.

23          I do want -- I don't -- this is not going to

24   just -- we're not going to have a case where this is a

25   recurring problem.  So you guys had no problems calling in to

1    me today, it was on your schedule, you called in.  Today's

2    communications, unless you're out in the middle of the ocean

3    somewhere, and maybe even then, I want you to just return

4    each other's calls within 24 hours or each other's e-mails.

5    That's going to be an order of the Court.

6            I want you to provide substantive responses and not

7    avoidance kinds of responses, and, you know, I'm not going to

8    require Mr. Yates to withdraw his motion to dismiss, but I

9    guess it would be -- this is the first motion to dismiss of

10   that nature that I have seen in my 14 years.  It doesn't mean

11   that it's not -- it doesn't pass Rule 11 standard, but it

12   would be fairly unique.  And one thing we have to be

13   concerned about is district judges is what is the Court of

14   Appeals going to think about -- I mean, not district judges,

15   but in the district court -- what is the Court of Appeals

16   going to think about a dismissal under these circumstances.

17           So, you know, it's -- it looks like a long shot to

18   me, but I can't -- I'm not going to -- it has been referred

19   to me, and I can only recommend anyway, and so I'm going to

20   allow briefing; but again, Mr. Liebowitz, it doesn't sound

21   like it's going to be terribly involved because the whole

22   motion itself, including the signature page and cover, is

23   five pages.  So, you know, I guess if it's not withdrawn,

24   then you have to respond, but --

25           MR. LIEBOWITZ:  Yeah (inaudible).

1          THE COURT:  I do want you guys -- just a second.  I

2    do want -- regardless of how you may feel about the nature of

3    the case and whether it's the kind of lawsuit that was

4    contemplated when the statute was passed, it is what it is

5    and so we've just got to deal with it.

6          And with this kind of a potential limited

7    violation, if any, I am going to be cognizant of the costs of

8    discovery and I will be sympathetic to any -- any perception

9    that it's -- it's going to cost twice as much to litigate

10   this case as any potential recovery would be because that's

11   just not what the Rules of Civil Procedure contemplate.

12          So I don't know what else to say.

13          MR. LIEBOWITZ:  Your Honor, (inaudible).

14          THE COURT:  Go ahead.

15          MR. LIEBOWITZ:  (Inaudible).  I think it's just a

16   lot time, a lot of expense, especially when the case is

17   (inaudible).  I mean we have to spend $10,000. (Inaudible)

18   know, a lot of money when the case (inaudible) settled, so

19   (inaudible) if it gets denied, for our (inaudible) attorneys

20   fees to respond to that.  I mean, turning to a settlement --

21   is this on the record now?

22          THE COURT:  We've been on the record since I called

23   the case.

24          MR. LIEBOWITZ:  Okay.  I was wondering if maybe you

25   could have the (inaudible).  I don't think it's -- the case

18

1    is (inaudible) without even having to go through a discovery.

2    I don't know if you have a couple minutes to discuss that and

3    see maybe if you could facilitate settlement and maybe we

4    could call back and, you know, maybe give a recommendation

5    and try to get it solved.  I think maybe that's a road to get

6    this resolved, you know, this week.

7            THE COURT:  Okay.  Well, I do that all the time.

8    Judge Blackburn's cases are a little bit different.  He -- I

9    would have to get approval from him, Mr. Yates, how do you

10   respond?

11           MR. YATES:  I'm -- when we had spoken to

12   Mr. Liebowitz, I think we put that, you know, on the record

13   in the filing, and we have had conversations, and if

14   Mr. Liebowitz thinks it would be help in order to

15   (inaudible), we're more than willing to, you know, engage in

16   that conversation.

17           I think we have different views of the role of the

18   federal courts in these disputes and Rule 11 and few other

19   things, but no, we're more than willing to -- to mediate in

20   front of the Court, in front of the magistrate (inaudible),

21   sitting as a Court, sitting as a mediator or with a

22   third-party mediator.

23           There is one more -- there is one comment just to

24   respond to something you said earlier just to help put this

25   in context.  Part of the scheduling order requires a

1   discovery cutoff and the notion of wanting to know

2   plaintiff's deposition date is so that you can work forward

3   or backwards, depending on how you want to look at it, to a

4   discovery date where after plaintiff's deposition you would

5   have time for experts, presumably my client also to be

6   deposed (inaudible), but also for the experts that the

7   parties agree would be part of the case.

8          And (inaudible) it was not just (inaudible) in

9   wanting to have plaintiff's deposition, it was so that we can

10  do our duty as part of the Rule 26 conference to suggest a

11  discovery cut-off date to the Court and (inaudible) not to

12  have plaintiff and defendant's mutual statements.

13         THE COURT:  Well, in an uncomplicated case,

14  Mr. Yates, we go six months here and we work discovery for

15  experts within that six months.  So usually initial

16  designation of experts is four months out, rebuttal is five

17  months out and all fact and expert discovery is six months

18  out from today.  That's the standard in anything, in most

19  cases, other than prisoner cases, which are much shorter, and

20  very complex cases, which could be much longer.

21         I don't view this as something out of the ordinary,

22  so that would be the dates that I'm going to give you if

23  those work with you.

24         MR. YATES:  Thank you, Your Honor.

25         THE COURT:  Okay.

20

```
 1              MR. LIEBOWITZ:  That's fine.

 2              THE COURT:  All right, so --

 3              MR. LIEBOWITZ:  In terms of scheduling, like a

 4    telephonic, like a settlement, I don't know, maybe

 5    (inaudible) you know, like maybe (inaudible) and then we call

 6    opposing counsel and maybe try to get it resolved.

 7              THE COURT:  Mr. Liebowitz, I'll do that.  I'll do

 8    that okay.  So probably I'll call you -- are you in next

 9    week?

10              MR. LIEBOWITZ:  Next week (inaudible), what works

11    with you.

12              THE COURT:  And are you in next week, Mr. Yates?

13              MR. YATES:  Yes, I'll up my calendar now.

14              THE COURT:  All right.  I'm thinking about -- I can

15    probably do East Coast time, maybe 4:30 on Monday.

16              MR. LIEBOWITZ:  On Monday?

17              THE COURT:  Yes.

18              MR. LIEBOWITZ:  Monday.  Okay, Monday.

19              THE COURT:  Is that all right -- Mr. Liebowitz, is

20    that all right?

21              MR. LIEBOWITZ:  4:30 Mountain Time?

22              THE COURT:  No, 4:30 Eastern Time.

23              MR. LIEBOWITZ:  4:30 my time.  Yeah, that should be

24    great.  On January 13?

25              THE COURT:  Yes.
```

21

1          MR. LIEBOWITZ:  Okay.

2          THE COURT:  And then I can -- I can call you

3    directly after that.  Okay, Mr. Yates?

4          MR. YATES:  Yeah, that is great.

5          THE COURT:  All right.

6          MR. LIEBOWITZ:  (Inaudible).  Our response to the

7    motion to dismiss (inaudible) scheduled sometime thereafter

8    (inaudible) next week.

9          THE COURT:  Let me set a date on that.  So when was

10   the motion filed?  Was it the 31st?

11         MR. YATES:  Yes, Your Honor.

12         THE COURT:  So the response I think is due 23 days

13   later, so January 20 --

14         MR. LIEBOWITZ:  (Inaudible).

15         THE COURT:  Is that right?  So I think -- I think

16   the response wouldn't be due until January 23.  So I wouldn't

17   be working on it yet.  If we're hot in the pursuit of

18   something, I will go ahead and extend the date on that, okay.

19         MR. LIEBOWITZ:  Okay.  So just so that you know, I

20   entered on the calendar as January 14, two weeks after --

21         THE COURT:  Now I think it's -- I think it's the

22   21st.  So I think it's 21 days for a response.  So --

23         MR. LIEBOWITZ:  (Inaudible).  Do you want to just

24   make it the end of January?

25         THE COURT:  Well, I mean, I'll leave it at the 21st

22

1    for now, but if need be, I will extend it.  So I just

2    wouldn't be working on it at the moment, if I were you, okay.

3              MR. LIEBOWITZ:  Okay, okay.  So I'll just put it on

4    the calendar for January 21.

5              THE COURT:  Yes.  It's certainly no earlier than

6    that and it will probably be later.  Okay?

7              MR. LIEBOWITZ:  So I will put it on January 21 and

8    then you'll call me on Monday?

9              THE COURT:  Okay, that's right.

10             MR. LIEBOWITZ:  Okay.  And I just call your court

11   to give them the telephone number if I'm out of the office.

12             THE COURT:  What we have is a number ending in

13   1660.

14             MR. LIEBOWITZ:  Oh, you do that and I can give the

15   court another number just in case and I can call you back.

16             THE COURT:  What number would you like me to call?

17             MR. LIEBOWITZ:  That number is fine, that

18   (516)233-1660.

19             THE COURT:  That's fine.  Okay.  So discovery

20   cutoff will be July 8, initial experts will be May 11,

21   rebuttal June 10, all written discovery 33 days prior to

22   close of discovery, Judge Blackburn sets his own pretrial

23   conferences.

24             Do we actually have a trial date today?

25             DEPUTY:  No.  So what the parties need to do, and

23

1  it will be on the minutes, e-mail -- send a joint e-mail to

2  judge Blackburn's chambers.

3        THE COURT:  Okay.

4        DEPUTY:  So within two days send a joint e-mail to

5  Judge Blackburn's Chambers requesting trial dates and trial

6  preparation dates.

7        THE COURT:  All right, very good.  Anything else

8  today (inaudible), Mr. Liebowitz?

9        MR. LIEBOWITZ:  Nothing, Your Honor, thank you very

10  much.

11        THE COURT:  Mr. Yates?

12        MR. YATES:  No, Your Honor.  Thank you very much.

13        THE COURT:  I will talk to you both next week,

14  okay.

15        (Whereupon, the within hearing was then in

16  conclusion at 11:39 a.m.)

17

18                    TRANSCRIBER'S CERTIFICATION

19  I certify that the foregoing is a correct transcript to the

20  best of my ability to hear and understand the audio recording

21  and based on the quality of the audio recording from the

22  above-entitled matter.

23

24  /s/ Dyann Labo                    January 24, 2020

25  Signature of Transcriber              Date